# IN THE COURT OF APPEALS OF IOWA

No. 14-1395
Filed December 24, 2014

**IN THE INTEREST OF D.W.,**
**Minor Child,**

**R.W., Father,**
**Appellant,**

**K.Y., Mother,**
**Appellant.**
_____

Appeal from the Iowa District Court for Scott County, Cheryl E. Traum, District Associate Judge.

A mother and father separately appeal the termination of their parental rights in their son. **AFFIRMED ON BOTH APPEALS.**

James G. Sothmann, Davenport, for appellant father.

Randall McNaughton of Lauren Phelps, P.L.L.C., Davenport, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Michael J. Walton, County Attorney, and Julie A. Walton, Assistant County Attorney, for appellee State.

Meghan Corbin of Gomez, May, L.L.P., Davenport, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**POTTERFIELD, J.**

A mother and father separately appeal the termination of their parental rights in their son.

**I. Factual and Procedural Background**

The child was born on June 20, 2009. His father was incarcerated at the time of his birth. The father was again incarcerated when the child was two years old and remained incarcerated until his recent release in August 2014. He has been convicted of several offenses, including lascivious acts with a child, burglary, and two violations of his parole. He is a registered sex offender.

The child was in his mother's care until 2013. The mother's care of the child was troubled. She has continually struggled with substance abuse. In 2011, the mother left the child, then one year old, in the house in the care of the mother's eleven-year-old brother so she could smoke marijuana in her car. Also in the house was an uncaged four-foot python. Her brother fell asleep, and the child was left unsupervised. The mother was charged with child endangerment and possession of a controlled substance.

In 2012, when the child was two years old, the mother was observed repeatedly striking the child in the head in a retail store. She was again charged with child endangerment. Soon after this incident, the child was tested for substances and results returned positive for cocaine. On November 14, 2012, the child was adjudicated a child in need of assistance, but was left in the care of his mother.

In 2013, when the child was three, police observed him wandering outside unattended. The police found the mother sleeping or passed out inside the

house along with her paramour. The police had difficulty waking her. The child was immediately removed from the mother's care. A removal hearing was held on April 23, 2013, and the child's placement was confirmed. The mother was charged again with child endangerment and was incarcerated in October of that year.

It further came to light that the mother's paramour had sexually abused the child. The abuse was formally confirmed and appropriate findings were issued. The juvenile court described the child's memories of the abuse as "graphic and detailed."

The mother was transferred to an inpatient substance abuse program. She was released in February 2014. Immediately after leaving the program, she reconnected with her paramour—the same man she knew to have sexually abused her then four-year-old son. She celebrated Valentine's Day and her paramour's birthday with him by going out to dinner and then to a bar. That evening, she posted a photo on social media of herself, her paramour, and her paramour's sister at a bar, huddled together and smiling. She included a description of the photo: "Drunk Af. Happy Birthday Baabyy !!"[1]

At a permanency hearing on March 12, 2014, the mother testified her visit with the paramour was not a social occasion, but rather it was an attempt to confront the paramour about his abuse and to gain closure. The juvenile court did not find this testimony credible, held "the mother does not appreciate the danger that [the paramour] presents to the child," and changed the goal of reunification to termination.

---

[1] "Drunk Af" in social-media vernacular means "drunk as fuck."

At the termination hearing, the juvenile court again found the mother's explanation of her fraternization with her paramour was not credible. It stated, "It is clear to the Court that the mother was celebrating the birthday of the man that sexually abused her child, not looking for an explanation or closure."

Testimony at the termination hearing reflects that the mother appears sincere in her desire to improve her parenting skills and is making progress in that endeavor, but it also demonstrates that those involved in the child's case do not believe the mother can care for the child without exposing him to further harm due to her past physical violence against the child and her apparently ongoing relationship with the child's sexual abuser. The district court terminated the father's parental rights pursuant to Iowa Code sections 232.116(1)(b), (d), (e), (f), (i), and (j) (2013), and the mother's parental rights pursuant to sections 232.116(1)(d), (f), (i), and (*l*). Both parents appeal.[2]

## II. Standard and Scope of Review

We review an order terminating parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

## III. Discussion

The mother first claims the Department of Human Services (DHS) failed to undertake reasonable efforts to reunify her with the child. However, she has not preserved this issue for our review. We have held, "The Department has an

___

[2] The father seeks to "join in [the mother's] Petition on Appeal in addition to his own Petition on Appeal." However, the parties' rights were terminated on different grounds and facts, so it is not possible for him to do so. *See In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) ("[The mother and father] each needed to advance their own reasons on appeal why, considering the juvenile court's findings regarding their individual strengths and weaknesses, their separate parental rights should not be terminated."). On his appeal, we will address only the claims he raises directly.

obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). There is no indication in the record that the mother expressed dissatisfaction with the services provided, requested specific services, or objected to the services prior to the termination hearing. She may not raise such an objection now, and she has failed to preserve her claim for review. *See id.*

The mother next claims the court's termination order is not supported by clear and convincing evidence of the grounds for termination.[3] "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The juvenile court terminated the mother's parental rights on four discrete statutory grounds. We may affirm on any one of the four grounds that is supported by clear and convincing evidence. *See id.*

We turn our attention to Iowa Code section 232.116(1)(f), which provides:

> [T]he court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on . . . the following grounds:
> . . . .
> f. The court finds that all of the following have occurred:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or

---

[3] The State contends this issue is not preserved because the mother did not "specifically address each of the grounds for termination of her parental rights." However, we understand the mother's claim to be an assertion that none of the four grounds for termination was supported by clear and convincing evidence as required by Iowa Code section 232.117(3) rather than individual challenges to particular elements in section 232.116(1).

for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The final element[4] of this ground for termination requires the State to present clear and convincing evidence the child is imminently likely to suffer an adjudicatory harm if returned to his mother's care. *See In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988) (determining the relevant language means the statutory requirement is satisfied when "the child cannot be returned to the parental home because the definitional grounds of a child in need of assistance . . . exist").

The mother objects to the juvenile court's decision, claiming it was predicated entirely on her social outing with her abusive paramour. The mother seems to underestimate the serious evidentiary weight of her continued interaction with the man who sexually abused her son. We are not persuaded by her claim that it was merely an isolated incident that does not warrant termination. We, like the juvenile court, do not find persuasive the mother's continued assertion that her paramour's birthday outing was confrontational or to obtain "closure."[5] We are in fact more troubled by her continued insistence that the event had no social underpinnings, which gives credence to testimony at the termination hearing that the mother had been sometimes untruthful about her sobriety since her release from her inpatient treatment.

---

[4] The record reflects the first three elements are undisputed.

[5] We give weight to the credibility determinations of the juvenile court. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). However, we need not afford any particular weight to those determinations to reach the same conclusion as to the mother's credibility regarding this incident. It is clear from the mother's social media description of the outing that seeking "closure" was not her intent in visiting with her paramour.

After learning of the mother's interaction with her paramour, both the DHS worker and the child's therapist gave testimony reflecting their belief the mother could not reliably be expected to shield the child from future abuse.  The juvenile court agreed.  We also agree that there is clear and convincing evidence of the child's ongoing exposure to adjudicatory harm if he were to be returned to the mother's care.  We affirm the juvenile court's conclusion that clear and convincing evidence supports termination of the mother's parental rights.

Both the mother and father claim termination is not in the child's best interests.  Even if grounds for termination are satisfied, the juvenile court must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child" before ordering termination.  Iowa Code § 232.116(2).  The district court properly did so.

As to the mother's claim, testimony during the termination hearing showed the child was still experiencing extreme difficulty processing the abuse he suffered at the hands of the mother's paramour.  Testimony further showed the visitations between the child and mother are sometimes traumatizing for the child, and the provider supervising the visits recommended the visits be terminated.  The child's best interests are served by allowing him to be placed expeditiously in a permanent family setting away from the history of abuse.

As to the father's claim, there is no evidence his retention of parental rights will serve the child's best interests in any way.  The father has been almost entirely absent from the child's life.  We affirm the juvenile court's determination

that the child's best interests are served by termination of both the mother's and the father's parental rights.

Finally, there are mitigating statutory factors that might persuade the juvenile court not to terminate parental rights. *See* Iowa Code § 232.116(3). The father claims the district court failed to analyze sections 232.116(3)(a)–(d).[6] However, these mitigating factors are entirely discretionary. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (noting the factors are "permissive, not mandatory"). Additionally, the evidence shows there is no close relationship between the child and father. Indeed, the father does not contest the district court's conclusion that he has abandoned or deserted the child pursuant to Iowa Code section 232.116(1)(b)[7] or any of the court's other grounds for termination. The juvenile court's failure to discuss section 232.116(3) factors in detail does not undermine its determination that termination of the father's parental rights is supported by statutory grounds and is in the child's best interest.

**AFFIRMED ON BOTH APPEALS.**

---

[6] Sections 232.116(3)(a), (b), and (d) are clearly inapplicable in this case. They provide the court need not terminate parental rights if it finds: "a. A relative has legal custody of the child. b. The child is over ten years of age and objects to termination. . . . d. It is necessary to place the child in a hospital, facility, or institution for care and treatment . . . ." It is unclear why the father cites to these provisions on appeal.

[7] "[T]he court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child [if] . . . [t]he court finds that there is clear and convincing evidence that the child has been abandoned or deserted." Iowa Code § 232.116(1)(b).